CT/JRMI
ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

AUG 31 2009

CLERK, U.S. DISTRICT COURT
By _____
       Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| MICHAEL PATRICK JACOBS, SR., § <br> and CHARLOTTE JACOBS, § <br> Individually, as the Representatives § <br> of the Estate of MICHAEL PATRICK § <br> JACOBS, JR., Deceased, and as Next § <br> Friends of J. K. and Z. J., Minors; § <br> § <br>     Plaintiffs; § <br> § <br> v. § <br> § <br> THE CITY OF FORT WORTH; and § <br> STEPHANIE A. PHILLIPS; § <br> § <br>     Defendants. § | Case No. **4 - 09 CV - 513 - Y** |

## ORIGINAL COMPLAINT

## STATEMENT OF THE CASE

1. This suit arises out of the death of Michael Patrick Jacobs, Jr., ("Michael") who died after being shot with a Taser gun by members of the Fort Worth Police Department.  Fort Worth officers shocked Michael with the Taser twice:  once for 49 seconds and a second time for five additional seconds after a 1 second interval.  Michael died shortly after he was shocked, and his death was ruled a homicide by the Tarrant County Medical Department.

## JURISDICTION AND VENUE

2. The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because this case involves allegations that Defendants are

liable pursuant to 42 U.S.C. § 1983 for violating the Constitutional rights of Michael Jacobs, Jr. through the use of plainly excessive force.

3. Venue is proper in the Northern District of Texas, Fort Worth Division pursuant to 28 U.S.C. § 1391(b) because all of the events and omissions giving rise to Plaintiffs' claim occurred in this district and division. Plaintiffs are suing for damages in excess of $75,000.

## PARTIES

4. Michael Patrick Jacobs, Sr., individually, as personal representative of the Estate of Michael Patrick Jacobs, Jr., and as next friend of J. K. and Z. J., minors, is a resident of Fort Worth, Tarrant County, Texas.

5. Charlotte Jacobs, individually, as personal representative of the Estate of Michael Patrick Jacobs, Jr., and as next friend of J. K. and Z. J., minors, is a resident of Fort Worth, Tarrant County, Texas.

6. The City of Fort Worth ("The City") is located in Tarrant County, Texas. The City may be served by delivering a copy of this complaint to the Mayor, City Manager, Clerk, Secretary, or Treasurer for the City, all of whom are located at 1000 Throckmorton St., Fort Worth, Texas 76102.

7. Stephanie A. Phillips ("Officer Phillips") is a corporal with the Fort Worth Police Department. Officer Phillips may be served at the Fort Worth Police Department at 350 W. Belknap Street. Fort Worth, TX 76102, or by serving Mr. Jeffrey Halstead, Chief of Police, Fort Worth Police Department, at the same address.

## FACTUAL BACKGROUND

8. On April 18, 2009, the family of Michael Patrick Jacobs, Jr., ("Michael") called the Fort Worth Police Department because their son, Michael, who was mentally disabled, had become disruptive and needed to be taken to the hospital.

9. Three officers of the Fort Worth Police Department, including Corporal Stephanie A. Phillips (collectively "Officers"), arrived at the home where Michael lived at approximately 10:30 a.m. and confronted Michael.

10. Witnesses reported that Michael was not combative and did nothing to threaten or provoke the Officers. Nevertheless, Officer Phillips shot Michael with a Taser gun, and the electrodes implanted in his neck and mid-chest. Although Michael immediately fell face-down on the ground with his hands folded over his chest, Officer Phillips continued to shock Michael for 49 seconds. After just a one second interval, Officer Phillips then shocked Michael a second time for an additional five seconds. The Taser used by the Fort Worth Police Department issues 50,000 volts with each shock and is designed to immobilize a person by over-stimulating the nervous system.

11. According to Officer Phillips, she "unknowingly kept the Taser trigger engaged for an unknown amount of time when she first applied the Taser, thus increasing the pre-programmed shock duration cycle of five seconds." *See* Report of Tarrant County Medical Examiner (**Exhibit A**). Officer Phillips also stated that, in the one second interval between the

first and second shocks, Michael continued to struggle and she warned him that if he did not "cease fighting and comply with officers' requests, she would shock him again. When [Michael] failed to cooperate, Phillips shocked him a second time." *Id.*

12. After being shocked for nearly one minute with the Taser, Michael was handcuffed and turned over. When the officers turned Michael over, they noticed that he began to have respiratory problems and was drooling. He then quit breathing and became unresponsive. The Officers did not attempt cardiopulmonary resuscitation on Michael. An ambulance was called to the scene, which transported Michael to the hospital. Michael was pronounced dead at approximately 12:00 p.m. He was 24 years old and had two children: J. K. and Z. J., minors.

13. On August 27, 2009, the Tarrant County Medical Examiner issued a press release concerning the death of Michael Patrick Jacobs, Jr., stating that it had ruled that his death was a homicide. The following day the autopsy report was released confirming that. **Exhibit A**. The autopsy showed no traces of alcohol, drugs, electrolyte imbalances, or signs of heart or lung disease that may have contributed to his death. **Exhibit A**. According the examiner, Michael suffered "sudden death during neuromuscular incapacitation due to application of a conducted energy device."

14. Michael was the fourth person killed by the use of a Taser by the Fort Worth Police Department.

## CAUSES OF ACTION

### I.   VIOLATIONS OF 42 U.S.C § 1983 BY OFFICER PHILLIPS

15. Plaintiff incorporates each and every allegation set forth in paragraphs 1 through 15 as if set forth fully herein.

16. Officer Phillips liable to Plaintiffs under 42 U.S.C. § 1983 because these Officers used excessive force against Michael in violation of Michael's Fourth Amendment Right.  The force used by Officer Phillips was clearly excessive because:

  a. Michael was not combative or threatening when he was first shocked, and gave Officer Phillips no justification for using the Taser gun on Michael;

  b. Even though Michal immediately fell to the ground when he was hit with the Taser, Officer Phillips continued to shock Michael for 49 seconds; and

  c. Officer Phillips shocked Michael a second time for five additional seconds, after waiting just one second.

17. Each of the foregoing acts was clearly excessive.  Moreover, the excessiveness of shock Michael with 50,000 volts of electricity for nearly one minute was objectively unreasonable given that:

  a. Michael gave Officer Phillips no reason to use the Taser gun;

  b.  Michael was immediately incapacitated by the first Taser shock (long before the first 49-second shock ended); and

  c. Michael was incapacitated before the second shock even began.

18. It would have been obvious to any reasonable officer that the conduct of Officers Phillips was unlawful in the circumstances of this case.

19. This unreasonable use of force proximately caused Michael's death.

## II.   VIOLATIONS OF 42 U.S.C § 1983 BY THE CITY OF FORT WORTH.

20. Plaintiff incorporates each and every allegation set forth in paragraphs 1 through 15 as if set forth fully herein.

21. Michael's death was also proximately caused by the gross neglect of the City of Fort Worth in failing to properly train and supervise its police officers in the proper use of Tasers. The blatant lack of adequate training is established by the clear pattern of similar incidents, which resulted in three deaths before Michael was tased by Officer Phillips.

22. Despite these deaths, the City of Fort Worth continued to equip its officers with Tasers without providing adequate training or supervision with respect to when Tasers should be used, how long the Taser trigger should be depressed, and whether additional shocks are necessary.

23. As a result of The City's failure to adequately train its officers, Officer Phillips improperly used the Taser by:

    a. employing the Taser even though use of force was unnecessary; and

    b. using the Taser excessively by:

        i. continuing to shock Michael for 49 seconds even though Michael was incapacitated almost immediately by the Taser; and

        ii.  shocking Michael a second time, even though Michael was incapacitated by the first shock

24. The City of Fort Worth had actual or constructive knowledge that the training provided to its officers regarding the use of Tasers was inadequate because multiple deaths occurred as a result of the use of Tasers by Fort Worth police officers before Michael was tased by Officer Phillips.

25. The City of Fort Worth's gross neglect in failing to properly train and supervise its police officers, therefore, amounted to conscious indifference to the rights of citizen such as Michael, especially considering the magnitude of harm that might result from the improper use of a Taser that discharges 50,000 volts.

## III.   TEXAS TORT CLAIMS ACT

26. Plaintiff incorporates each and every allegation set forth in paragraphs 1 through 15 as if set forth fully herein.

27. The City of Fort Worth is also liable pursuant to TEX. CIV. PRAC. & REM. CODE § 101.021 because the Officers were acting within the course and scope of their employment when they negligently injured Michael through the use of tangible personal property.

## JURY DEMAND

28. Plaintiffs hereby request a trial by jury.

## PRAYER

29. WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request
that the Court enter judgment against Defendants, jointly and severally,
for the following damages:

    a.  Past and future compensatory damages;

    b.  Past and future pain and suffering;

    c.  Past and future mental anguish;

    d.  Past and future lost wages;

    e.  Past medical expenses;

    f.  Funeral expenses; and

    g.  Punitive and exemplary damages.

Respectfully submitted,

EBERSTEIN & WITHERITE, LLP

BY: _____

**BRIAN A. EBERSTEIN**
State Bar No. 06386000
beberstein@ewlawyers.com
**AMY K. WITHERITE**
State Bar No. 00788698
awitherite@ewlawyers.com
**SHELLY T. GRECO**
State Bar No. 24008168
sgreco@ewlawyers.com
3100 Monticello Avenue, Suite 500
Dallas, TX 75205
214/378-6665
214/378-6670 (fax)

**ATTORNEYS FOR PLAINTIFFS**

# EXHIBIT "A"

# TARRANT COUNTY MEDICAL EXAMINER'S DISTRICT
## SERVING TARRANT, PARKER, & DENTON COUNTIES
### Investigator's Report

CASE #: 0904721          Tarrant          TYPE: Jurisdiction          IDENTITY: Identified

NIZAM PEERWANI, M.D.                                        THOMAS SWAN
CHIEF MEDICAL EXAMINER          CHIEF FORENSIC DEATH INVESTIGATOR
DECEASED: Michael Patrick Jacobs , Jr.
ADDRESS: 6266 Ava Court Drive, Fort Worth, Texas 76112
AGE: 24                    BIRTH DATE:                    MARITAL STATUS: Single

PHONE: (817)446-7821          RACE OR COLOR: Black          SEX: M

HEIGHT: 5' 5' 6"                WEIGHT: 143.6

SSN:                          MANNER OF DRESS: Hospital gown
OCCUPATION: Not reported
PLACE OF EMPLOYMENT:


DATE OF DEATH: 4/18/2009          TIME OF DEATH: 12:00
PLACE OF DEATH DESCRIPTION: John Peter Smith Hospital
ADDRESS OF DEATH: 1575 South Main Street, Fort Worth, Texas 76104
HOSPITALIZED: Yes
ADMIT DATE: 4/18/2009          ADMIT TIME: 11:39
ENVIRONMENT CONDITION: HVAC controlled
CHARACTERISTIC OF PREMISES: Emergency Room

DATE/TIME M.E. NOTIFIED: 4/18/2009 12:50
ARRIVED: 4/18/2009
REPORTING PERSON: Officer B. Presney
REPORTING AGENCY: Fort Worth Police Department
ADDRESS: 350 West Belknap, Fort Worth, Texas 76102.
PHONE: (817)922-3222
PRONOUNCED DEAD BY: Dr. A. Burton
PRONOUNCING AGENCY: John Peter Smith Hospital
LAST TREATED BY: JPS staff

DATE/TIME OF OCCURENCE: 4/18/2009 10:36
INJURY AT WORK: N0
PLACE OF OCCURENCE: Residential yard
LOCATION: 6266 Ava Court Drive, Fort Worth, Texas 76112
TRAUMA RELATED: No

IDENTIFIED BY: Gloria Hamilton
IDENTIFICATION TYPE: Visual
DATE/TIME OF IDENTIFICATION: 4/18/2009 -Time: 12:10
IDENTIFICATION STATUS: Positive ID
COMMENTS: Positively ID to this FDI by the reporting nurse
ADDRESS:
PHONE:


NEXT OF KIN NOTIFICATION DATE/TIME: 4/18/2009 12:05
NOTIFIED BY: Hospital staff
NOTIFYING AGENCY: John Peter Smith Hospital
NEXT OF KIN NAME: Michael Jacobs, Sr.
RELATIONSHIP: Father
COMMENTS:
ADDRESS: 6266 Ava Court Drive, Fort Worth, 76112 Texas
PHONE: (817)446-7821
BODY TO: Tarrant County Medical Examiner's Office
          CONVEYANCE:

# TARRANT COUNTY MEDICAL EXAMINER'S DISTRICT
## SERVING TARRANT, PARKER, & DENTON COUNTIES
### Investigator's Report

CASE #: 0904721          Tarrant          TYPE: Jurisdiction          IDENTITY: Identified

NIZAM PEERWANI, M.D.                                          THOMAS SWAN
CHIEF MEDICAL EXAMINER                  CHIEF FORENSIC DEATH INVESTIGATOR
FUNERAL HOME: None reported

NAME OF RELEASING AUTHORITY:

RELATIONSHIP:

DISPOSITION OF PROPERTY:


MEDICAL INVESTIGATOR:
 Michael Floyd

TARRANT COUNTY MEDICAL EXAMINER'S DISTRICT
SERVING TARRANT, PARKER, & DENTON COUNTIES

INVESTIGATOR'S REPORT

NIZAM PEERWANI, M.D.                          THOMAS SWAN
CHIEF MEDICAL EXAMINER                        CHIEF FORENSIC DEATH INVESTIGATOR
Case Number: 0904721                          Case Type: Jurisdiction

DECEDENT'S NAME: Michael Patrick Jacobs , Jr.                    AGE: 24
ADDRESS: 6266 Ava Court Drive, Fort Worth, Texas 76112
BIRTH DATE: ·                MARITAL STATUS: Single              PHONE: (817)446-7821

CASE NO. 0904721 Tarrant

The decedent, a 24-year-old Black male who has a reported history of familial dysfunction due to mental
aberrancy and illicit drug use, presented to the John Peter Smith Hospital Emergency Room in cardiopulmonary
arrest after being shot with a Taser device by a Fort Worth Police Officer trying to effect custodial care at the
scene.

DESCRIPTION OF BODY:

The decedent presents as a nude Black male. Rigor mortis is present, slight, developing, breakable with light
applied force, and consistent with the decedent's supine position. Livor mortis is not discernible visually.
Independent of the onset of rigor mortis, the decedent's musculature appears tense. Invasive, resuscitative,
medical intervention is present. The remains are warm to the touch both centrally and peripherally, and
anteriorly and posteriorly. Two small circular defects, consistent with the use of a Taser device, are present to
the decedent's anterior upper thoracic and lower neck region.

MEDICAL HISTORY:

Walsh reports no known pre-existing clinical history for the decedent.

DETAILS OF INCIDENT:

Walsh relates that the decedent arrived at the John Peter Smith Hospital Emergency Room at approximately
11:39 hours on Saturday, April 18, 2009, after lapsing into cardiopulmonary arrest at his residence following
being Tasered by Fort Worth police officers responding to a domestic disturbance involving the decedent. He
came to the JPS Hospital via MedStar EMS ambulance with resuscitation efforts ongoing, but was pronounced
shortly after arrival by Dr. Burton due to his intractable loss of effective cardiorespiratory function.

Detective Sergeant Moore, with the Fort Worth Police Department Major Crimes Unit, reports that the decedent
normally resides at 6266 Ava Court Drive with his parents, Charlotte and Michael Jacobs, Sr. Moore also
advises his agency has had numerous involvements with the decedent in the past. On Saturday, April 18, 2009,
911 was called from the decedent's residence regarding an ongoing domestic dispute between the decedent and
his family; his father was banishing him from the residence due to erratic, unacceptable behavior and the
decedent was refusing to leave. Corporal Phillips was attempting to get the decedent to go voluntarily to the
psychiatric unit at John Peter Smith Hospital for assessment and treatment, but he declined her offer and
continued to aggress at the scene. Subsequently, Phillips advised the decedent that if he did not calm down and
comply with her directions, she would have to use her Taser device on him; he replied reportedly, "Go ahead,
I've always wanted to see what that feels like anyway." When he continued to fail to follow commands, Phillips

Case No. 0904721 Tarrant County Medical Examiner's Office

discharged the Taser and shocked the decedent one time. When the event was over, the decedent was breathing and non-combative. A couple of minutes later, Phillips looked at the decedent and noticed he was drooling and apparently unresponsive, and upon closer inspection, she could not detect any evidence of respiration, thus, MedStar EMS was contacted and the decedent transported to the John Peter Smith Hospital Emergency Room. Crime scene officer Bob Presney reports the involved Taser unit has been confiscated and is secured at the police department, where the internal memory chip will be assessed. Presney also reports that one of his fellow officers attending to crime scene duties at John Peter Smith Hospital learned from nursing staff there that the decedent's core temperature upon presentation at the emergency room was 97.0 degrees Fahrenheit rectally.

Officer Wood, with the Fort Worth Police Department, advises that his agency received the call for service at 10:36 hours on Saturday, April 18, 2009, and has assigned report number 09042435 for this event.

FOLLOW UP INVESTIGATIONS REQUIRED

Funeral home selection.

COMMENTS:

Records:

Medical records from John Peter Smith Hospital are received, labeled clearly and appropriately, and appended to the case file.

Michael Floyd B.S.

Case No. 0904721 Tarrant County Medical Examiner's Office

---

Addendum added 4/19/2009 by Michael Floyd B.S.

Detective Heidi Tiwater, with the Fort Worth Police Department Major Case Unit, advises that during her after-incident interview with Corporal Phillips, who discharged the Taser, Phillips indicated she unknowingly kept the Taser trigger engaged for an unknown amount of time when she first applied the Taser, thus, increasing the pre-programmed shock duration cycle of five seconds. After the subject continued to struggle, Phillips again warned the decedent that if he did not cease fighting and comply with officer requests, she would shock him again. When the decedent failed to cooperate, Phillips shocked him a second time. Information from the Taser memory module is still unavailable due to isssues involving application of the software required to effect the data download and report. Detective Tiwater and Detective Baggett are working to address that issue and will forward the information as soon as is practicable. Tiwater also advises that Phillips remarked abouth how the decedent was perspiring excessively before and during the event even though it was somewhat cool due to the overcast weather conditions.

---

Addendum added 4/20/2009 by Michael Floyd B.S.

Medical records from John Peter Smith Hospital are requested via fax.

---

Addendum added 4/20/2009 by Michael Floyd B.S.

Medical records requested previously from John Peter Smith Hospital are received via fax (47 pages), labeled clearly and appropriately, and placed in Dr. Peerwani's mailbox for review and subsequent inclusion in the case file.

---

Addendum added 4/27/2009 by Michael Floyd B.S.

A copy of each of the MedStar EMS reports related to this incident are received, labeled clearly and appropriately, and forwarded to the Forensic Records department for inclusion in the case file. A copy was placed in Dr. Peerwani's office mailbox.

---

Addendum added 5/3/2009 by Michael Floyd B.S.

Detective Heidi Tiwater, with the Fort Worth Police Department Major Crimes Unit, was contacted and advises she is finalizing her investigative reports regarding this death investigation and anticipates having the packet of information deliverable to the medical examiner's office by Monday, May 4, 2009. The Taser unit utilized in this incident is being transported personally by two officers to the Taser company for advanced assessment regarding delivered voltage and amperage as well as a manufacturer specifications check. Tiwater will forward the report of findings for review once it is available from Taser International, Inc.

---

Addendum added 7/10/2009 by Michael Floyd B.S.

Detective Baggett, with the Fort Worth Police Department Major Case Unit (817-392-4430), was contacted and requested to provide a summary of all cases / calls involving her agency and the decedent (and his address), with a summary of the type of call and resolution of each.

---

Addendum added 7/10/2009 by Michael Floyd B.S.

Tamara, with the John Peter Smith Hospital Medical Records Department, was contacted and requested to forward a copy of all of the decedent's psychiatric records.

---

Addendum added 7/10/2009 by Michael Floyd B.S.

The decedent's requested psychiatric medical records from John Peter Smith Hospital are received, labeled clearly and appropriately, and forwarded to Dr. Peerwani for review and inclusion in the case file.

---

Addendum added 7/22/2009 by Michael Floyd B.S.

Case No. 0904721 Tarrant County Medical Examiner's Office

A copy of the previously requested information on all Fort Worth Police Department calls related to the decedent, received on a CD-ROM, is found in FDI Floyd's office mailbox, labeled clearly and appropriately, and given to Linda Anderson for forwarding to Dr. Peerwani for his review and inclusion in the case file.

Addendum added 8/3/2009 by Michael Floyd B.S.

07/31/2009  08:30 hours  A telephone call was placed to the office of Detective Heidi Tiwater, with the Fort Worth Police Department, for the purpose of serving a request/subpoena for her records regarding this case, but she is reportedly out of her office for the day.

Addendum added 8/3/2009 by Michael Floyd B.S.

Chad Carr, with MedStar EMS, was contacted regarding an alleged report of failure of the AED device used during the decedent's resuscitation period at the scene and during transport to the hospital.  He advises that he will forward the request for information to Dr. Beeson and Dr. Griswell, with the Emergency Physician's Advisory Board, for action.

Addendum added 8/3/2009 by Michael Floyd B.S.

A request for the analysis reports related to the AED/Monitor-Defibrillator used by MedStar EMS in this incident is faxed to the Emergency Physician's Advisory Board.

Addendum added 8/4/2009 by Michael Floyd B.S.

A copy of the MedStar documents related to the alleged failure of the AED/Monitor-Defibrillator unit and the decedent's electrocardiographic report from Consultants in Cardiology (Dr. John Willard), are received via fax from Detective Heidi Tiwater, labeled clearly and appropriately, and forwarded to the forensic records section for inclusion in the case file; a separate copy was given personally to Dr. Peerwani for his review.

Addendum added 8/4/2009 by Michael Floyd B.S.

A representative of Consultants in Cardiology advises the decedent is not a patient of Dr. John Willard, but states the staff cardiologists read EKG's of MHMR clients submitted through that agency.  A message requesting a return call, to elicit clinical history information on the decedent, was left on the voicemail of Barbara Jefferson (817-569-4300 x.4416).

Addendum added 8/7/2009 by Michael Floyd B.S.

A message requesting a return call, to elicit clinical history information on the decedent and request medical records from Tarrant County MHMR, was left on the voicemail of Barbara Jefferson (817-569-4416).

Addendum added 8/7/2009 by Michael Floyd B.S.

A request for the decedent's medical records was faxed to Tarrant County MHMR (817-569-4494).

Addendum added 8/7/2009 by Michael Floyd B.S.

Char Carr, with MedStar EMS, provided a copy on CD-R of all documentation regarding this case.  The CD-R was given to Linda Anderson for forwarding to Dr. Peerwani.

Addendum added 8/10/2009 by Michael Floyd B.S.

08/04/2009  Detective Heidi Tiwater, with the Fort Worth Police Department, was contacted regarding obtaining a copy of her completed file related to this death investigation.  She advises that she anticipates having her file completed by tomorrow and available for Dr. Peerwani within a day or, after her superiors have reviewed the file for accuracy and corrections.

08/06/2009  Detective Heidi Tiwater, with the Fort Worth Police Department, was contacted regarding

Case No. 0904721 Tarrant County Medical Examiner's Office

obtaining the copy of her completed file related to this death investigation and she reports that she intends to have it done within a day or so, after which it will be forwarded to her supervisors for review. She anticipates having it available as early as Monday, August 10, 2009.

---

Addendum added 8/10/2009 by Michael Floyd B.S.

Dr. Peerwani reports he received from Detective Heidi Tiwater, with the Fort Worth Police Department, a copy of the involved officer's statements to Tiwater during her investigation of this case and a three-page investigative report. In response to Dr. Peerwani's inquiry as to when he would receive the expected complete case file, Tiwater was contacted; she reports that she has conducted six interviews, two with each of the three officers involved, and that she submitted to Dr. Peerwani four of those transcribed interviews on Friday, August 7, 2009. The remaining two interviews were transcribed this date and are awaiting review and release by the two officers and their attorney; Tiwater states she will forward them as soon as that release it received. Tiwater also relates that she spoke with her sergeant and he advised her that it may take another week to review her case file with supervisory and executive personnel in their agency before it can be released to Dr. Peerwani as a completed investigative product, and that a provisional case file will not be released to the medical examiner's agency in the interim.

---

Addendum added 8/11/2009 by Michael Floyd B.S.

At the request of Dr. Peerwani, a call was placed to Detective Heidi Tiwater, with the Fort Worth Police Department Major Case Unit, regarding his urgent need to receive her agency's case file on this death investigation. Tiwater was reportedly out of her office, thus, a request to sepak with her sergeant was made. Sergeant Moore's voicemail responded upon transfer of the call and a message was left advising him that Dr. Peerwani has waited three months for the Fort Worth Police Department report regarding this death, and that if the completed report is not received by close of business on Wednesday, August 12, 2009, Dr. Peerwani will make his cause and manner of death determinations without benefit of that information.

---

Addendum added 8/12/2009 by Michael Floyd B.S.

At the request of Dr. Peerwani, a call was placed to Detective Heidi Tiwater, with the Fort Worth Police Department Major Case Unit, regarding his urgent need to receive her agency's case file on this death investigation. A message was left on her voicemail advising her that Dr. Peerwani expects her agency's completed report by 16:30 hours on Wednesday, August 12, 2009, and that if it is not received by that time, he advises he will make his cause and manner of death determinations without consideration of her report information.

---

Addendum added 8/13/2009 by Michael Floyd B.S.

On 08/12/2009, Sergeant J. D. Moore, with the Fort Worth Police Department Major Case Unit, left a voicemail message advising that he is unable to release his agency's file regarding this case until it has been reviewed through the agency's "chain-of-command" and then the "city's legal department," thus, he is unable to provide a copy of the file by the time requested by the office of the medical examiner.

---

Addendum added 8/27/2009 by Roger Metcalf

At 4:00 pm today I attempted to contact the decedent's family to notify them a press release was forthcoming and the results of the ruling. I was not able to speak directly to the family as every contact phone number we had returned the message "disconnected." I called and spoke to Bryan Ebberstein, the family's attorney, at 214-378-6665, and advised him of the situation. Per Dr Peerwani's direction, I advised Ebberstein of the ruling, and he said he would promptly relay same on to the family. I faxed a copy of the press release to Ebberstein at 214-378-6670, and to attorney Bill Lane at 817-625-5881. At approximately 4:15 pm I e-mailed a copy of the press release to the County Judge, the County Commissioners, the Ft W Mayor's office, the Ft W PD Chief, Ft W PIO, and the City Attorney's office. At approximately 4:30 pm I e-mailed a

Case No. 0904721 Tarrant County Medical Examiner's Office

copy of the press release to the local media.



Office of Chief Medical Examiner
Tarrant County Medical Examiner's District
Tarrant County, Texas
200 Feliks Gwozdz Place, Fort Worth, Texas 76104-4919
(817) 920-5700  FAX (817) 920-5713

# AUTOPSY REPORT

**NAME:** Michael Patrick JACOBS, Jr.
**Approximate Age:** 24 years
**Height:** 66 inches

**CASE NO:** 0904721
**Sex:** Male
**Weight:** 143.6 pounds

I hereby certify that on the nineteenth day of April 2009, beginning at 0915 hours, I, Nizam Peerwani, M.D., pursuant to Article 49.25 of Code of Criminal Procedure, State of Texas, performed a complete autopsy on the body of MICHAEL PATRICK JACOBS, JR. at the Tarrant County Medical Examiner's District Morgue in Fort Worth, Texas and upon investigation of the essential facts concerning the circumstances of the death and history of the case as known to me, I am of the opinion that the findings, cause and manner of death are as follows:

## FINDINGS:

I.   **Investigative findings:**
   A. Scene findings:
   1. Fort Worth-911 received a call on 04-18-2009 at 1032 hours, from Charlotte Jacobs at 6266 Ava Court Drive, Fort Worth, Texas requesting MedStar ambulance be dispatched to transport her son, Michael Patrick Jacobs, Jr. (JACOBS) to John Peter Smith Hospital.
   2. Officers J.R. Oakley and R.S. Grinalds (unit H114) arrived first at the scene at 1045 hours followed by Officer S.A. Phillips who arrived at 1047 hours.
   3. Officer S.A. Phillips deployed her city-issued Taser X-26 Conducted Energy Devise (CED) tasing JACOBS twice, the first deployment occurred at approximately 11:00 hours for a duration lasting 49 seconds and a second time after an interval of one second, for a duration of 5 seconds.
   4. MedStar dispatched to the scene on 04-18-2009 at 11:06 hours arriving at 11:10 hours.
   5. JACOBS transported by MedStar to emergency room of John Peter Smith Hospital arriving 1139 hours and pronounced dead in the emergency room at 1200 hours

0904721
Michael Patrick JACOBS, Jr.

FINDINGS (Continued):

   B. **Medical intervention**:
1. Initial assessment at scene by MedStar: JACOBS unconscious, apneic and without pulse
2. Downloadable code summary indicates that JACOBS was in cardiac standstill
3. MedStar personnel removed Taser® probes and initiated cardiopulmonary resuscitation and transported the patient to local area hospital.
4. At John Peter Smith Hospital emergency department, JACOBS remained in complete asystole and was later pronounced dead. Core temperature recorded in the emergency room at 11:39 AM was 98.7° Fahrenheit.

   C. **Medical history**:
1. Depressive and Schizoaffective disorder, bipolar type.
2. Medical mention of cardiac murmur and asthma.
3. History of polysubstance abuse including cannabis and cocaine.

II. **Postmortem findings**:

   A. Evidence of deployment of conducted energy device with two cutaneous puncture wounds (probe marks) 5 inches apart including:
1. Right anterior neck along the medial border of right sternocleidomastoid muscle in the proximity of right jugular vein without vascular laceration.
2. Right mid-chest at the level of 5th right anterior intercostal space with no evidence of penetration of barb into the chest cavity.

   B. Observable injuries:
1. Absence of evidence of:
    a) Scalp, cranial, cerebral or visceral trauma
    b) Smothering
    c) Application of choke hold or neck restraint
    d) Defensive wounds
2. Superficial gliding abrasion of right elbow and proximal dorsal forearm consistent with injury sustained in a fall

   C. Absence of cardiac pathology:
1. Normal heart (weight = 366.7 gms) with absence of chamber hypertrophy or dilatation, coronary artery disease or valvular deformities
2. Histopathology of heart: Negative

_____0904721
Michael Patrick JACOBS, Jr.

FINDINGS (Continued):

    D.  Pulmonary vascular congestion, severe, with mild edema (resuscitated)
    E.  Absence of histologic stigmata of bronchial asthma
    F.  Comprehensive postmortem toxicology:
         1.  Dated 05-08-09: Negative
         2.  Dated 07-27-2009 (repeat): Negative
    G. Postmortem vitreous chemistry: Negative
    H. Generalized visceral congestion



## VI.    Conclusion        Michael Patrick Jacobs, Jr. (JACOBS) suffered from depressive and psychotic disorder including schizophrenia for which he received treatment at John Peter Smith Hospital. Records indicate that he was poorly compliant. There was some suggestion in the medical records that he had a cardiac murmur and asthma.

April 18, 2009, at approximately 11:00 hours, JACOBS was tased twice by Fort Worth Police Officer responding to a domestic disturbance call with a city-issued Taser® X-26 Conducted Energy Device. The first CED deployment was prolonged lasting 49 seconds and the second, after an interval of one second, lasted for a duration of 5 seconds. JACOBS fell face down with his arms across under his chest. There were repeated verbal commands made to JACOBS to pull his arms behind his back which JACOBS failed to comply. After handcuffing, JACOBS was turned over, when he was noted to progress to respiratory difficulty. He began to drool, then he quit breathing and became unresponsive. Officers at the scene did not initiate cardiopulmonary resuscitation. Attempts by paramedics from MedStar and the emergency room staff at John Peter Smith to revive failed and JACOBS was pronounced dead on 04-18-2009 at 12:00 noon.

A complete postmortem examination was performed at the Tarrant County Medical Examiner's morgue on 04-19-2009 attended by Detective H. Tiwater of the Fort Worth Police Department. Examination of the head, face, oral cavity and layered dissection of the neck revealed no trauma or application of neck hold or choke hold. Likewise, there were no traumatic injuries of chest, abdomen or the central nervous system. Defensive wounds were not detected.

Postmortem histology indicated a normal heart with absence of stigmata of bronchial asthma. Although there was a history of drug abuse,  repeat postmortem toxicology studies were negative for all drugs including psychomotor stimulant drugs and ethanol. Postmortem vitreous chemistry did not reveal electrolyte imbalance.

Based upon the inquest findings and in accordance with Statute 49.25 of Code of Criminal Procedure, the cause and manner of death of Michael Patrick Jacobs, Jr. are listed as follows:

Cause of Death:    *Sudden Death During Neuromuscular Incapacitation*
    *Due To Application of A Conducted Energy Devise.*

Manner of Death:    *Homicide*

**CAUSE OF DEATH:**

SUDDEN DEATH DURING NEUROMUSCULAR INCAPACITATION DUE
TO APPLICATION OF A CONDUCTED ENERGY DEVICE

**MANNER OF DEATH:**   HOMICIDE

---

Signature

Nizam Peerwani, M.D.
Chief Medical Examiner

Signature

Marc A. Krouse, MD.
Chief Deputy Medical Examiner

Signature

Gary L. Sisler, D.O.
Deputy Medical Examiner

Signature

R. Lloyd White, M.D., Ph.d.
Deputy Medical Examiner

Signature

Shiping Bao, M.D.
Deputy Medical Examiner



## GROSS ANATOMIC DESCRIPTION

**I.    CLOTHING AND PERSONAL EFFECTS:**  The body is presented to the Morgue nude, secured in a white body bag.

**II.    THERAPEUTIC INTERVENTION:**
1.    Indwelling endotracheal tube with ET–lock
2.    Intravenous lines along left arm, left lateral neck as well as intra-osseous line along left tibia
3.    Nine EKG pads

**III.    EXTERNAL BODY DESCRIPTION:** The body is that of a normally developed adult African-American male appearing the stated age of 24 years with a body length of 66 inches and body weight of 143.6 pounds.  Body presents medium build, muscular, with normal hydration and good preservation.  There is moderate rigor with developed posterior fixed lividity of normal color.  Body is cold to touch post refrigeration.  Head is covered by short curly, black hair with non-receding anterior hairline and without balding.  Face is cyanotic and  and shaven with trimmed black mustache and goatee.  There is average body hair of male pattern distribution.    Eyes are open with clear bulbar and palpebral conjunctivae and with tache noire. Bulbar conjunctival edema is present.  Irides are brown with white sclerae.  Cataracts are not identified. Arcus senilis are absent.  Pupils are equal at 4 mm. Orbits appear normal.  Nasal cavities are unremarkable with intact septum. Oral cavity presents natural teeth with good oral hygiene characterized by absence of caries, Both the upper and lower frenulum are intact and there are no mucosal injuries of the lips.  Ears are unremarkable with no hemorrhage in the external auditory canal. A small lipoma of the right ear lobe is present measuring 3/16 inch in diameter. Neck is rigid and there are no palpable masses. The right anterior neck reveals a small puncture wound. Chest is symmetrical without barrel configuration. A small puncture wound of right chest overlying the heart is present. Abdomen is scaphoid and palpation non-revealing. Upper and lower extremities are equal and symmetrical presenting cyanotic nailbeds without clubbing. Edema is absent.  There are no fractures, injuries, deformities or amputations present. There are no defensive wounds present. External genitalia present descended testicles with circumcised penis.  The back reveals dependent lividity with contact pallor.

0904721
Michael Patrick JACOBS, Jr.

SCARS:      Right cheek measuring 1/2 inch

TATTOOS:  Three incuding:
1.      Two masks along right lateral arm
2.      Obscure writing along left upper chest
3.      A person in helmet along left lateral arm

## CUTANEOUS INJURIES

1.      There is evidence of deployment of conducted energy devise with two cutaneous puncture wounds (probe marks) 5 inches apart including:
a.  Right anterior neck along the medial border of right sternocleidomastoid muscle in the proximity of right jugular vein, 53 inches above the right heel and 1-1/2 inches right of anterior midline, measuring 3/16 inch in diameter and extending into the underlying muscle to a depth no greater than ¼ inch with focal soft tissue hemorrhage. There is no evidence of injury to vascular structures of the anterior neck.
b.  Right mid-chest at the level of 5th right anterior intercostal space, 48 inches above right heel and 4 inches right of anterior midline, measuring ¼ in diameter and extending into the underlying muscle to a depth no greater than ¼ inch with focal soft tissue hemorrhage. There is no evidence of penetration of barb into the chest cavity

2. Superficial gliding abrasion of right elbow and proximal right dorsal forearm measuring 2-1/2 inches by ½ inch

## IV.    INTERNAL EXAMINATION

1.    **INTEGUMENTS**:  A Y-shaped thoraco-abdominal incision is made and the organs are examined in situ and eviscerated in the usual fashion. The subcutaneous fat is normally distributed, moist and bright yellow. The musculature of the chest and abdominal area is of normal color and texture.

2.    **SEROUS CAVITIES**:   The chest wall is intact without rib, sternal or clavicular fractures.    The pleura and peritoneum are congested, smooth glistening and essentially dry, devoid of adhesions or effusion.   There is no scoliosis, kyphosis or lordosis present.  The left and right diaphragms are in their normal location and appear grossly unremarkable. Pericardial sac is intact smooth glistening and contains normal amounts of serous fluid.

0904721
Michael Patrick JACOBS, Jr.

**3.     CARDIOVASCULAR SYSTEM:**  The heart is of normal size and weighs 366.7 gms and there is absence of chamber hypertrophy or dilatation.  Left ventricular wall is 1.5 cms and the right 0.5 cms.   Cardiac valves are unremarkable with the aortic, mitral, pulmonary and tricuspid valves having a circumference of 6.5, 9, 7 and 11 cms respectively. The coronary ostia are in the normal anatomical location leading into widely patent coronary arteries without plaques.   Right dominant circulation is present. The endocardial surface is smooth without thrombi or inflammation. Sectioning of the myocardium presents no gross evidence of ischemic changes either of recent or remote origin.  The aortic arch along with the great vessels appear grossly unremarkable. Congenital cardiac anomalies are absent.

**4.     PULMONARY SYSTEM:**  A layered dissection of the anterior neck is carried our. The neck presents an intact hyoid bone as well as thyroid and cricoid cartilages.   Larynx is comprised of unremarkable vocal cords and folds, appearing widely patent without foreign material, and is lined by smooth, glistening membrane. Epiglottis is a characteristic plate-like structure without edema, trauma or pathological lesions. Both the musculature and the vasculature of the anterior neck are unremarkable except for a small puncture wound of right anterior neck as noted above.  Trachea and spine are in the midline presenting no traumatic injuries or pathological lesions.

Lungs are hyper inflated and together weigh 1566.8 gms.  Both the lungs appear severely congested and slightly edematous and on sectioning frothy edema fluid cannot be easily expressed. There are no gross pneumonic lesions or abnormal masses identified. The tracheobronchial tree contains small amounts inspissated frothy edema fluid without aspirated gastric contents or mucus plugs and pulmonary arterial system is unremarkable without thrombo-emboli. Pleural surface is pink with mild patchy anthracosis and without fibrosis.

**5.     GASTROINTESTINAL SYSTEM:**   Esophagus is intact with normal gastro-esophageal junction and without erosions or varices. Stomach is also normal without gastritis or ulcers.  Stomach contains 200 gms of food particles. Loops of small and large bowel appear grossly unremarkable. The appendix is unremarkable.

Liver is of normal size and weighs 1664.8 gms presenting a brown smooth glistening surface.  On sectioning the hepatic parenchyma is brown, homogeneous and congested.  Gallbladder is unremarkable containing 20 mL of green bile and there is no evidence of cholecystitis or lithiases. Pancreas weighs

0904721
Michael Patrick JACOBS, Jr.

130.8 gms with yellow lobulated cut surface and without acute or chronic pancreatitis.

**6.     GENITOURINARY SYSTEM:**  Left and right kidneys weigh 153.9 gms and 136.8 gms respectively. The capsules strip with ease and the cortical surfaces are smooth, brown, glistening and congested.  On sectioning the cortex presents a normal thickness of 0.5 cms above the medulla. The renal columns of Bertin extend between the well demarcated pyramids and appear unremarkable. The medulla presents normal renal pyramids with unremarkable papillae. The pelvis is of normal size and lined by gray glistening mucosa. There are no calculi. Renal arteries and veins are normal.

The ureters are of normal caliber lying in their course within the retro peritoneum and draining into an unremarkable urinary bladder devoid of urine.  External genitalia present a circumcised penis without hypospadia, epispadias or phimosis. There are no infectious lesions or tumors noted. The descended testicles are of normal size encased within an intact and unremarkable scrotal sac and on palpation abnormal masses or hernias are not present. The prostate is of normal size and shape and sectioning presents normal two lateral lobes with thin median lobe forming the floor of the unremarkable urethra. There are no gross pathological lesions.

**7.     HEMATOPOIETIC SYSTEM:**  Spleen weighs 113.8 gms presenting a grey smooth capsule and on sectioning reveals a reddish-brown soft splenic pulp. There is no lymphadenopathy. Bone marrow is red and firm and thymus gland is involuted.

**8.     ENDOCRINE SYSTEM:**  Thyroid gland is of normal size and shape presenting two well-defined lobes with connecting isthmus and a beefy brown cut-surface. There are no goitrous changes or adenomas present. Adrenal glands are of normal size and shape and sectioning present no gross pathological lesions. Pituitary gland is encased within and intact sella turcica and presents no gross pathological lesions.

**9.     CENTRAL NERVOUS SYSTEM:**  A scalp incision, craniotomy and evacuation of the brain are carried out in the usual fashion. Scalp is intact without contusions or lacerations. Calvarium is likewise intact without bony abnormalities or fractures. Brain weighs 1495.6 gms presenting moderate congestion of the leptomeninges.   Overlying dura is intact and unremarkable.   Cerebral hemispheres reveal a normal gyral pattern with mild-to-moderate global edema. Brainstem and cerebelli show similar changes with bilateral mild uncal and

0904721
Michael Patrick JACOBS, Jr.

cerebellar tonsillar notching.  Circle of Willis is patent presenting no evidence of thrombosis or berry aneurysm.  On coronal sectioning of the brain the ventricular system is symmetric and contains clear cerebrospinal fluid.  There are no space occupying lesions present.  Spinal cord is not examined.

HISTOLOGY
Heart:     No histopathologic diagnosis. Absence of myocardial cell hypertrophy, myonecrosis, small vessel disease or interstitial fibrosis. Absence of pathology of conduction system.
Lungs:     Prominent congestion with mild edema. Absence of stigmata of bronchial asthma including absence of thickening of basement membrane, goblet cell hyperplasia or eosinophilic infiltrates. There are no mucus plus noted. There are scattered pigment laden lower respiratory tract histiocytes present. One section reveals a microscopic focus of aspiration with acellular debris and localized inflammatory response.
Liver:     No histopathologic diagnosis except for mild microvesicular steatosis
Kidneys:     No histopathologic diagnosis
Spleen:     No histopathologic diagnosis
Adrenals:     No histopathologic diagnosis
Thyroid:     No histopathologic diagnosis
Brain:     No histopathologic diagnosis

## SPECIMENS AND EVIDENCE COLLECTED

1.     30 mL of aortic blood, 10 mL of femoral vein blood, 5 mL of vitreous and 30 mL of gastric contents for toxicology
2.     Representative tissue sections in formalin for histology
3.     15 digital exam photos
4.     Blood card
5.     Vitreous for postmortem chemistry
6.     Pulled scalp and pubic hair
7.     Blood in four red top tubes and three purple top tubes

Date of Exam:        April 19, 2009
Dictated/Typed:      April 19, 2009
Completed:           August 27, 2009

NSP:np

# Office of Chief Medical Examiner
## Tarrant, Denton and Parker Counties, Texas

200 Feliks Gwozdz Place, Fort Worth, Texas 76104-4919 ◆ (817) 920-5700

Examiner: Peerwani        Autopsy No. 0904721





# Toxicology Test Results

Office of Chief Medical Examiner
Toxicology Laboratory Service
200 Feliks Gwozdz Place
Fort Worth, Texas 76104
Name: **Michael Patrick Jacobs**

Case Number: **0904721**
Toxicology Work Number: **0900746**

Nizam Peerwani, M.D., DABFP
Chief Medical Examiner
Angela Springfield, PH.D., DABFT
Chief Toxicologist
Priority: **1**

Service Request Number: **002**

| Specimen | Drug | Result | Drug Amount | Performed By |
|---|---|---|---|---|
| AORTA BLOOD | COCAINE AXSYM | NEGATIVE | | B. LANDRY |
| AORTA BLOOD | OPIATES AXSYM | NEGATIVE | | B. LANDRY |
| AORTA BLOOD | AMPHETAMINES AXSYM | NEGATIVE | | B. LANDRY |
| AORTA BLOOD | BENZODIAZEPINES AXSYM | NEGATIVE | | B. LANDRY |
| AORTA BLOOD | ETHANOL AXSYM | NEGATIVE | | J. HO |
| AORTA BLOOD | ETHANOL | NEGATIVE | | J. HO |
| AORTA BLOOD | ACID | NEGATIVE | | C. LEWIS |
| AORTA BLOOD | BASE | NEGATIVE | | C. LEWIS |

Report Prepared By:

Approved By:

Approved Date: 5/8/09

# Toxicology Test Results

Office of Chief Medical Examiner
Toxicology Laboratory Service
200 Feliks Gwozdz Place
Fort Worth, Texas 76104
Name: **Michael Patrick Jacobs**

Case Number: 0904721
Toxicology Work Number: 0900746

Nizam Peerwani, M.D., DABFP
Chief Medical Examiner
Angela Springfield, PH.D., DABFT
Chief Toxicologist
Priority: 1

Service Request Number: **002**

| Specimen | Drug | Result | Drug Amount | Performed By |
|---|---|---|---|---|
| AORTA BLOOD | ETHANOL | NEGATIVE | | J HO |
| AORTA BLOOD | COCAINE AXSYM | NEGATIVE | | B LANDRY |
| AORTA BLOOD | OPIATES AXSYM | NEGATIVE | | B LANDRY |
| AORTA BLOOD | AMPHETAMINES AXSYM | NEGATIVE | | B LANDRY |
| AORTA BLOOD | BENZODIAZEPINES AXSYM | NEGATIVE | | B LANDRY |
| AORTA BLOOD | ACID | NEGATIVE | | C WHEELER |
| GASTRIC | ACID | NEGATIVE | | C WHEELER |
| AORTA BLOOD | BASE | NEGATIVE | | C WHEELER |
| GASTRIC | BASE | NEGATIVE | | C WHEELER |

Report Prepared By:

Approved By:

Approved Date: 7/27/09



NMS Labs
3701 Welsh Road, PO Box 433A, Willow Grove, PA 19090-0437
Phone: (215) 657-4900  Fax: (215) 657-2972
e-mail: nms@nmslabs.com
Robert A. Middleberg, PhD, DABFT, DABCC-TC, Laboratory Director

*NP*

## Toxicology Report

Report Issued    08/04/2009 18:00

| | |
|---|---|
| Patient Name | JACOBS, MICHAEL |
| Patient ID | ~~80904721~~ |
| Chain | 11062824 |
| Age | 24 Y |
| Gender | Male |
| Workorder | 09166195 |

To:   10147
Tarrant County Medical Examiner
Office of the Medical Examiner
200 Feliks Gwozdz Place
Fort Worth, TX  761044919

Page 1 of 2

### Positive Findings:

| Compound | Result | Units | Matrix Source |
|---|---|---|---|
| Sodium | 132 | mEq/L | Vitreous Fluid |
| Potassium | 7.9 | mEq/L | Vitreous Fluid |
| Chloride | 123 | mEq/L | Vitreous Fluid |
| Creatinine | 0.6 | mg/dL | Vitreous Fluid |
| Urea Nitrogen | 9 | mg/dL | Vitreous Fluid |
| Glucose | < 20 | mg/dL | Vitreous Fluid |

See Detailed Findings section for additional information

### Testing Requested:

| Analysis Code | Description |
|---|---|
| 1916FL | Electrolytes Panel, Fluid |
| 7027FL | Glucose, Fluid |

### Specimens Received:

| ID | Tube/Container | Volume/ Mass | Collection Date/Time | Matrix Source | Miscellaneous Information |
|---|---|---|---|---|---|
| 001 | Red Vial | 1.5 mL | 04/19/2009 09:15 | Vitreous Fluid | |

All sample volumes/weights are approximations.

Specimens received on 07/28/2009.



**NMS LABS**

Page 2 of 2

## Detailed Findings:

| Analysis and Comments | Result | Units | Rpt. Limit | Specimen Source | Analysis By |
|---|---|---|---|---|---|
| Sodium | 132 | mEq/L | | 001 - Vitreous Fluid | Potentiometry |
| Potassium | 7.9 | mEq/L | | 001 - Vitreous Fluid | Potentiometry |
| Chloride | 123 | mEq/L | | 001 - Vitreous Fluid | Potentiometry |
| Creatinine | 0.6 | mg/dL | | 001 - Vitreous Fluid | Potentiometry |
| Urea Nitrogen | 9 | mg/dL | | 001 - Vitreous Fluid | Potentiometry |
| Glucose | < 20 | mg/dL | | 001 - Vitreous Fluid | Colorimetry |

**Other than the above findings, examination of the specimen(s) submitted did not reveal any positive findings of toxicological significance by procedures outlined in the accompanying Analysis Summary.**

## Reference Comments:

1. Glucose - Vitreous Fluid:

     Analysis for Glucose was performed by:
     Health Network Laboratories
     2024 Lehigh Street
     Allentown, PA 18103

2. Urea Nitrogen - Vitreous Fluid:

     Analysis for Electrolytes Panel, including Sodium, Potassium, Chloride, Creatinine and Urea Nitrogen was performed by:
     Health Network Laboratories
     2024 Lehigh Street
     Allentown, PA 18103

Chain of custody documentation has been maintained for the analyses performed by NMS Labs.

Unless alternate arrangements are made by you, the remainder of the submitted specimens will be discarded six (6) weeks from the date of this report; and generated data will be discarded five (5) years from the date the analyses were performed.

## Analysis Summary and Reporting Limits:

Acode 1916FL - Electrolytes Panel, Fluid - Vitreous Fluid

-Analysis by Potentiometry for:

| Compound | Rpt. Limit | Compound | Rpt. Limit |
|---|---|---|---|
| Chloride | N/A | Sodium | N/A |
| Creatinine | N/A | Urea Nitrogen | N/A |
| Potassium | N/A | | |

Acode 7027FL - Glucose, Fluid - Vitreous Fluid

-Analysis by Colorimetry (C) for:

| Compound | Rpt. Limit | Compound | Rpt. Limit |
|---|---|---|---|
| Glucose | N/A | | |

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

ORIGINAL

RECEIVED
U.S. DISTRICT COURT
NORTHERN DISTRICT

2009 AUG 31 AM 10:23

CLERK OF COURT

**I. (a) PLAINTIFFS** MICHAEL PATRICK JACOBS, SR., AND CHARLOTTE JACOBS, IND. AND AS REPRESENTATIVES OF THE ESTATE OF MICHAEL PATRICK JACOBS, JR., DEC'D., AND AS NEXT FRIENDS TO TA'MICHAEL ROBERTSON AND ZANIA JACOBS, MINORS

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff TARRANT
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number) BRIAN A. EBERSTEIN EBERSTEIN & WITHERITE, LLP, 3100 MONTICELLO AVE, STE. 500, DALLAS TX 75205 (214-378-6605)

Attorneys (If Known)

4-09 CV-513-Y

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☒ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☒ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1331 42 U.S.C. § 1983

Brief description of cause:
DEATH OF MICHAEL PATRICK, JR. DUE TO EXCESSIVE FORCE BY DEF (TASER)

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ IN EXCESS OF $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions)

JUDGE _____

DOCKET NUMBER _____

DATE 8/31/2009

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # FW9312 AMOUNT 350 APPLYING IFP _____ JUDGE Y MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF TEXAS**

**Civil Filing Notice - Fort Worth Division**

---

CIVIL ACTION NO:   4 - 09 CV - 5 1 3 - Y

This case has been assigned to District Judge: _____

(Complete if applicable)
TRANSFERRED FROM: _____   DATE FILED: _____

---

Civil cases are assigned to a judge by random draw. A docket clerk for each judge maintains the recording of documents filed with the Clerk. A complete list of phone numbers for both the judges' chambers and the docket clerks is provided.

| Judge | Court Settings | Pleadings Filed |
|-------|----------------|-----------------|
| (A) Judge John H. McBRYDE | (817)850-6650 | (817)850-6611 |
|     Even Cases: 850-6652   Odd Cases: 850-6653 | | |
| (Y) Judge Terry R. MEANS | (817)850-6673 | (817)850-6612 |
| (BE) Magistrate Judge Charles BLEIL | (817)850-6690 | (817)850-6697 |

For access to local rules, attorney admission information, frequently asked questions, common forms, filing instructions, and records information, please visit our web site at **www.txnd.uscourts.gov**. To speak to someone in the district clerk's office, please call (817) 850-6601.

To receive electronic access to court docket sheets and filed documents, contact the PACER Service Center at **www.pacer.pcs.uscourts.gov** or by phone at 1-800-676-6856 for a log-in and password.